OPINION
Defendant-appellant Charles Smith appeals from a judgment rendered by the Mahoning County Common Pleas Court upon a jury verdict finding him guilty of two counts of murder with firearm specifications. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS
On December 1, 1997, Campbell police responded to a hang-up call placed to 911 by Harold Lothard. Lothard told the officers that appellant, with whom he was friends, called him and stated that he had shot two people. Lothard led police to the house where the victims lived. Police discovered the bodies of Ronna Cvetkovich and Frank Flickinger at the premises. They observed several gunshot wounds to both victims' heads.
Subsequently, appellant voluntarily arrived at the police station where he was held in custody. He was later indicted by the Mahoning County Grand Jury on two counts of murder in violation of R.C. 2903.02(A) with firearm specifications pursuant to R.C. 2941.145(A). Appellant pled not guilty to the charges.
A jury trial commenced on August 19, 1998. The jury returned a verdict finding appellant guilty of both counts as well as the firearm specifications. Appellant was sentenced to two incarceration terms of fifteen years to life for the murder counts. He was sentenced to two definite three-year incarceration terms for the firearm specifications. All terms were ordered to run consecutively. This appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth five assignments of error on appeal. His first assignment of error alleges:
 "THE COURT ERRED IN FAILING TO SUPPRESS DEFENDANT'S POLICE-STATION STATEMENTS TO LAW-ENFORCEMENT AUTHORITIES."
While at the police station, appellant was questioned by Special Agent James Ciotti from the Ohio Bureau of Criminal Identification and Investigation. After activating a tape recorder, Agent Ciotti advised appellant of his rights as required by Miranda v. Arizona (1966),384 U.S. 436. He then asked appellant, "keeping these rights in mind, do you want to talk to us?" Appellant did not reply. Agent Ciotti then asked, "is that a no?" Appellant replied, "No. No." Agent Ciotti then noted that appellant did not wish to speak with him, and he turned off the tape recorder. Agent Ciotti claimed that, at this point, he asked appellant, "Do you want an attorney? Is that why you don't want to talk to us?" (Suppression Hrg. Tr. 9) Agent Ciotti stated that appellant responded, "No, that is not it. I am just too upset to talk about it. No one will ever know what went on in the house. * * * I'm not supposed to be sitting in this chair." (Suppression Hrg. Tr. 9). Appellant moved to have this statement suppressed. The trial court overruled his motion and allowed the statement to be introduced into evidence.
 LAW AND ANALYSIS
In Miranda, supra at 467-71, the United States Supreme Court held that an individual subjected to custodial interrogation must be informed of his right to remain silent and of his right to have counsel present during questioning. Questioning must cease if an individual invokes these rights at any time prior to or during questioning. Id. at 473-474. OnceMiranda warnings have been given, a suspect may waive the right to remain silent or the right to counsel and choose to make a statement. NorthCarolina v. Butler (1979), 441 U.S. 369, 373.
In the case at bar, appellant was advised of his rights pursuant toMiranda. Prior to his comments, he did not request an attorney. However, the record clearly indicates that appellant invoked his right to remain silent. At this point, Agent Ciotti asked whether appellant's decision not to talk meant that he wanted an attorney. The issue is whether this question constituted an "interrogation" as contemplated by Miranda and its progeny with the result that its response could not be admitted into evidence at trial.
To determine whether a suspect has been "interrogated," the heart of the inquiry focuses on police coercion and whether the suspect has been compelled to speak by that coercion. State v. Tucker (1998),81 Ohio St.3d 431, 436. Any statement, question or remark which is "reasonably likely to elicit an incriminating response" is an interrogation. State v. Knuckles (1992), 65 Ohio St.3d 494, 495, citingRhode Island v. Innis (1980), 446 U.S. 291, 301. In deciding whether appellant's statement was voluntary, we must look to the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; and the existence of threat or inducement. State v. Getsy
(1998), 84 Ohio St.3d 180, 188. With these factors in mind, we find that Agent Ciotti's question was not likely to elicit an incriminating response. At the time of the questioning, appellant was 53 years old. He had been incarcerated in the past. The interrogation lasted long enough for Agent Ciotti to explain appellant's rights and ask whether he wished to talk. When appellant answered in the negative, the tape was stopped, and the interrogation ended. Only one question followed. Agent Ciotti asked, "Do you want an attorney? Is that why you don't want to talk to us?" It is not reasonable to think that such a question would elicit an incriminating response from appellant. To the contrary, it is unreasonable to think that the reply would be anything other than "yes" or "no." Thus, Agent Ciotti's question did not constitute an interrogation. Appellant's statement was made voluntarily. As such, the trial court properly overruled appellant's suppression motion. Appellant's first assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE ILLEGALLY OBTAINED FROM DEFENDANT'S RESIDENCE."
Officer Gary Bednarik from the Campbell Police Department signed two affidavits indicating that probable cause supported his belief that evidence of the crime could be located in appellant's house and car. Based upon these affidavits and an attached statement of facts, Judge Almasy issued a warrant to search appellant's house and a warrant to search appellant's car. Several items were obtained from each location. Appellant moved to suppress these items claiming that they were improperly obtained in violation of the Fourth Amendment to the United States Constitution. The trial court overruled his motion. The evidence was used at trial.
Appellant argues that the search warrants were defective and their fruits should have been excluded at trial. The warrants were based upon Lothard's statements to police. Appellant claims that these statements were hearsay. While he acknowledges that hearsay statements may provide probable cause to obtain a warrant, he contends that Lothard did not witness the crimes and was not a victim. Appellant argues that the police should have further inquired as to Lothard's reliability.
 LAW AND ANALYSIS
Crim.R. 41(C) provides in pertinent part:
 "A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. * * *."
In Illinois v. Gates (1983), 462 U.S. 213, 238-39, the United States Supreme Court held:
 "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for * * * conclud[ing] that probable cause existed." [Citations omitted].
The Ohio Supreme Court adopted this test in State v. George (1989),45 Ohio St.3d 325, 329.
A review of the record leads us to the conclusion that the police had probable cause to obtain warrants to search appellant's house and car. Lothard informed police that appellant told him that he had shot two people. Lothard led police to the scene of the crime where they found the victims. Appellant appeared at the Campbell police station and made a comment that could be perceived to implicate him in the shootings. These facts were communicated to Judge Almasy in the form of affidavits with an attached statement of facts. The affidavits described specific items that were believed to be located in appellant's house and car. From the foregoing, Judge Almasy had a substantial basis on which to find a fair probability that evidence of the crimes would be found in appellant's house and car. Gates, supra.
The warrants granted permission to police to search the house and car for the specific items. Nonetheless, appellant avers that the evidence should not have been used because the statement of facts upon which the warrants were issued made no reference to his car and was not notarized. Appellant's argument is not well taken. While the statement of facts did not specifically mention appellant's car, it did note that subsequent to the shootings, appellant arrived at the Campbell police station. Appellant's car was parked in front of the police station. Therefore, police had probable cause to believe that evidence of the crime would be found in the car. We find that the affidavits sufficiently communicated this to Judge Almasy. Furthermore, the statement of facts attached to the affidavits complied with Crim.R. 41. The affidavits contained a notation stating, "complainant further avers the facts upon which such belief is based are: (see attached)." They were sworn to and subscribed in the presence of Judge Almasy. The statement of facts was attached to the affidavits. As such, the evidence obtained was not rendered inadmissible by the Fourth Amendment. Appellant's second assignment of error is found to be without merit.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error on appeal alleges:
 "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS DEFENDANT'S PRIOR `PLAN IT OUT' STATEMENT AND INFORMATION REGARDING DEFENDANT'S POSSESSION OF FIREARMS AS IMPROPER CHARACTER EVIDENCE OFFERED AGAINST DEFENDANT."
Appellant previously lived with one of the victims and her son, Earl McCready. In a chamber hearing following opening statements, appellant's attorney objected to testimony he believed would be given by McCready. First, he objected to any testimony regarding appellant's ownership of guns. Second, he objected to testimony concerning a statement made to McCready by appellant. He anticipated that McCready would claim that appellant told him that if he ever killed somebody, he would plan it out. The trial judge indicated that he would allow this testimony.
McCready testified at trial. When statements were made concerning the ownership of guns, appellant's attorney objected. His objection was overruled. However, he did not object when McCready was asked whether he had any conversations with appellant about the gun. McCready's response to this question was, "He said that he needed it for protection, you know; he would have to plan something out if he was going to do something. And that's about it."
Appellant now argues that McCready's testimony concerning appellant's statement that he would plan something out should not have been allowed by the trial court. We disagree.
 LAW AND ANALYSIS
Initially, it must be noted that appellant has not preserved this argument for appeal. A grant or denial of a motion in limine does not preserve error for appellate review. State v. Hill (1996),75 Ohio St.3d 195, 202-203. In order to preserve an argument for appeal, parties must renew their objections at the appropriate time during trial.State v. Brown (1988), 38 Ohio St.3d 305, paragraph three of thesyllabus. Because appellant failed to object at trial to testimony concerning his prior statement, he has waived his right to argue against its admissibility on appeal. Hill and Brown, supra. However, even if we assume arguendo that appellant had preserved this issue for appeal, we find that it was not improper for the trial court to admit McCready's testimony.
The basis for appellant's objection during the chamber hearing was that his prior statement was inadmissible character evidence pursuant to Evid.R. 404(B). He argued that the prosecution intended to use the statement to show that on the date of the shootings, appellant acted in conformity with a prior action. The trial court indicated that the statement would be admissible, not to show action in conformity with it, but to establish motive, opportunity, intent, preparation, plan, knowledge or absence of mistake or accident.
Evid.R. 404(B) provides in part:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
If the other act tends to show by substantial proof any of the purposes permitted by Evid.R. 404(B), evidence of the act may be admissible. Evidence of other acts tending to show these other purposes may be proved whether they are contemporaneous with or prior or subsequent to the act in question. R.C. 2945.59.
Appellant contends that the statement was too vague. He asserts that there is no connection between the prior statement and the crimes for which he was charged. Thus, he argues that the evidence should not have been admitted. In support of this contention, appellant cites a series of cases that provide that the other act must bear some relationship to the acts constituting the crime charged. State v. Clemons (1994),94 Ohio App.3d 701; State v. Kelly (1993), 89 Ohio App.3d 320; State v.Smith (1992), 84 Ohio App.3d 647.
Taken alone, appellant's statement that he would plan something out if he ever did something as communicated by McCready is indeed vague. However, viewed in the context of the line of questioning posed to him, we find that the statement tends to show by substantial proof appellant's opportunity, plan and intent to commit murder. First, appellant's conversation with McCready revealed that appellant possessed a gun. Having the means to commit the crimes tends to show that he had the opportunity. Second, appellant's statement, made during a conversation about a gun that he owned, indicates that he had, or was in the process of devising, a plan involving the gun. Finally, possessing a firearm and commenting that he would plan something out if he ever did something with it is evidence that tends to show that he intended to commit a crime with the gun.
It was not improper for the trial court to allow McCready to testify about his conversation with appellant. However, as previously noted, even if it was improper, appellant failed to object at trial. As such, appellant's third assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error alleges:
 "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN NOT PERMITTING THE TESTIMONY OF DEFENSE WITNESSES BRENDA WILLIAMS AND EUGENE WILSON."
At trial, the prosecution objected to the testimony of two witnesses. In a chamber hearing, appellant proffered their testimony. He claimed that they would testify that, more than a month before the murders, they were at the premises where the shootings occurred for the purpose of renting the house. While they were there, they witnessed a drug deal. Appellant argued that this testimony was relevant because he intended to show that the murders were drug related.
The prosecutor contended that the testimony should not be allowed for two reasons. First, he asserted that the witnesses' observations were not relative to the crimes as they occurred more than a month before the shootings. Second, he claimed that when he spoke with the witnesses, they stated that the activity appeared to be a drug deal, but did not say that they actually saw a transaction occur. Appellant offered nothing further to challenge the prosecutor's assertions.
The testimony was not allowed as the trial court found that the witnesses could only speculate that what they saw was indeed a drug deal. Because their testimony would be based solely on speculation, the trial court determined that they were not competent to testify.
Appellant contends that the trial court confused competency with credibility. He notes that the witnesses would have been subject to cross-examination as to what they actually saw. Moreover, he maintains that due process entitled him to present witnesses in his defense.
 LAW AND ANALYSIS
The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide that a criminal defendant shall have the right to compulsory process to procure the attendance of witnesses in his favor. State v. Denis (1997), 117 Ohio App.3d 442, 445. The United States Supreme Court has held that this right, in plain terms, is "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." Washington v. Texas (1966),388 U.S. 14, 19. The United States Supreme Court has further stated:
 "The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case."
 Taylor v. Illinois (1987), 484 U.S. 400, 410-11. Therefore, a defendant's right to present witnesses is subject to the rules of procedure and evidence created to ensure an equitable and credible determination of his guilt or innocence. Chambers v. Mississippi (1973),410 U.S. 284, 302. For a witness's testimony to be competent, a witness must have personal knowledge of that to which he or she testifies. Evid.R. 602; Evid.R. 104(A). A trial court has wide discretion in determining whether a witness is competent to testify. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph one of the syllabus, cert. denied,497 U.S. 1011. We will not disturb a trial court's discretionary decision for a mere error of law; instead, the trial court must have acted with an unreasonable, arbitrary or unconscionable attitude. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
We find that the trial court did not abuse its discretion in prohibiting the two witnesses to testify. Given the limited content of appellant's proffer and the prosecutor's uncontroverted assertion that the testimony could only be based on speculation, it was not unreasonable, arbitrary or unconscionable for the trial court to excluded the witnesses' testimony.
Moreover, even if we assume arguendo that the trial court erred in not allowing the two witnesses to testify based on appellant's proffer, such error on the part of the trial court was harmless. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The proffered testimony may have convinced the jury that the victims were either drug dealers or users. However, this court is not willing to believe that, despite all the evidence against appellant, the jury would have attributed the murders to some unknown drug dealer rather than appellant. Apparently, appellant would have this court believe that a plausible defense would have been that some unknown drug dealer planted blood on appellant's clothes and in his car, wiped gunshot residue on appellant's hand and, disguised as appellant, called Harold Lothard, leading him to the victims who happened to be appellant's ex-girlfriend and the man with whom she was then living. Such a defense would not have saved appellant.
Appellant's fourth assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FIVE
Appellant's fifth assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL."
At the conclusion of the prosecution's case in chief, appellant moved for acquittal pursuant to Crim.R. 29. He argued that a judgment of acquittal was appropriate as the prosecution failed to establish every element of the case beyond a reasonable doubt. His motion was overruled.
Appellant notes that no murder weapon was introduced. He submits that Lothard was revealed to be a convicted drug dealer. He contends that the gunshot residue and blood evidence were extremely weak. Finally, appellant argues that the statement he gave to police was ambiguous in meaning and given under stress. As such, he avers that the jury based its verdict on mere possibilities rather than concrete proof.
 LAW AND ANALYSIS
Crim.R. 29 provides that the trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offenses. A court shall not enter a judgment for acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Apanovitch (1987),33 Ohio St.3d 19, 23. When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 318-19; Statev. Jenks (1991), 61 Ohio St.3d 259, 266.
Upon reviewing the record in this case, we find that the jury had sufficient evidence before it by which to conclude that each element of murder was proven beyond a reasonable doubt. R.C. 2903.02(A) provides that no person shall purposely cause the death of another. In this case, two victims perished as a result of gunshot wounds to the head. Appellant was found to have gunshot residue on his hand. Blood stains were found in his car and on his clothes. Lothard testified that appellant called him on the night of the incident and stated, "[i]t's over. I did it. I'm finished." Furthermore, the jury heard Agent Ciotti testify that when appellant was at the police station, he stated that no one would ever know what went on in the house. Because there was sufficient evidence to support a conviction, appellant's fifth assignment of error is found to be without merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 ____________________ VUKOVICH, J.
Donofrio, J., concurs.
DeGenaro, J., concurs.